UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Court File No.:  19-cv-2735

DAN PEDERSON, CONNOR OLSON
and SHELL WHEELER, on behalf of
themselves and all others similarly
situated,

Plaintiffs,

v.

DONALD J. TRUMP FOR PRESIDENT,
INC., a principal campaign committee,

Defendant.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

# INTRODUCTION

1. Dan Pederson, Connor Olson and Shell Wheeler ("Plaintiffs") bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Donald J. Trump for President, Inc. ("Defendant" or "Trump For President"), in negligently, and/or willfully contacting Plaintiffs through text messages on Plaintiffs' cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiffs privacy. Plaintiffs allege as follows upon personal knowledge as to their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

1

## NATURE OF THE ACTION

2. Donald J. Trump is a candidate running for the office of the President of the United States of America. Trump For President is the official candidate committee that facilitates and financially supports Mr. Trump's campaign for office. Trump For President is registered with the Federal Elections Commission

3. Trump For President routinely sends text messages to wireless telephones with automatic telephone dialing equipment without the wireless users prior express consent, in violation of the TCPA.

4. The TCPA strictly forbids spam text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones, placed to numbers obtained without the prior express consent of the call recipients.

5. Trump For President violations caused Plaintiffs and members of the Class actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages, as well as the violation of their statutory rights.

6. Plaintiffs and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Trump For President conduct, and is likely to be redressed by a favorable decision in this action.

7. Moreover, the transmission of an unsolicited text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular

device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

8. Plaintiffs seek an injunction stopping Trump For President from sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs seek up to $1,500 in damages for each text messages in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

10. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, a federal statute.

11. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. §§ 1391(b) because Defendant, at all times herein

mentioned, was doing business in the State of Minnesota, and a substantial part of the events giving rise to the claim occurred in this jurisdiction.

## PARTIES

12. Plaintiff Dan Pederson is, and at all times mentioned herein was, a resident of Hennepin County, State of Minnesota. He is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153(39).

13. Plaintiff Connor Olson is, and at all times mentioned herein was, a resident of Ramsey County, State of Minnesota. He is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (39).

14. Plaintiff Shell Wheeler is, and at all times mentioned herein was, a resident of Ramsey County, State of Minnesota. He is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (39).

15. Defendant Trump for President maintains its corporate office at 725 Fifth Avenue, New York, NY 10022 and is a "person" as defined by 47 U.S.C. § 153 (39).

16. Plaintiffs allege that at all times relevant herein Defendant conducted business in the state of Minnesota and within this judicial district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. §§ 227 *et seq.*

17. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991),

regarding certain telemarketing practices.

18. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

19. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

20. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiffs provided express consent within the meaning of the statute.

21. A text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

22. Political campaign-related calls or text messages are not exempt from the

---

codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq*
[2] 47 U.S.C. § 227(b)(1)(A)(iii).
[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

TCPA or the FCC's rules and require the called party's prior express consent if an autodialer is used to send the messages.

23. The FCC issued a biennial reminder for political campaigns about robocalls and text abuse on March 14, 2016 with enforcement advisory number 2016-03.

> **Prohibition Against Prerecorded Voice Messages and Autodialed Calls to Cell Phones and Other Mobile Services**. Prerecorded voice messages and autodialed calls (including autodialed live calls, prerecorded or artificial voice messages, and text messages) to cell phones and other mobile services such as paging systems are prohibited, subject to only three exceptions: (1) calls made for emergency purposes, (2) calls made with the prior express consent of the called party, (3) and calls made to collect debts "owed to or guaranteed by the United States."3 **This broad prohibition covers prerecorded voice and autodialed calls, including those sent by nonprofit or political campaign-related organizations**. Callers contending that they have the prior express consent to make prerecorded voice or autodialed calls to cell phones or other mobile service numbers have the burden of proof to show that they obtained such consent. Further, call recipients may revoke their consent to be called using any reasonable method including verbally or in writing.

*See* https://www.fcc.gov/search/#q=enforcement%20advisory%20number%202016-03&t=edocs

24. In the 9th Circuit case of *Marks v Crunch San Diego, LLC* the Court held:

> The U.S. Court of Appeals for the Ninth Circuit rejects the argument that a device cannot qualify as an automatic telephone dialing system unless it is fully automatic, meaning that it must operate without any human intervention whatsoever. By referring to the relevant device as an "automatic telephone dialing system," Congress made clear that it was targeting equipment that could engage in automatic dialing, rather than equipment that operated without any human oversight or control. 47 U.S.C.S. § 227(a)(1).

*Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883, at *1 (9th Cir. 2018).

**FACTUAL ALLEGATIONS**

25.     Trump For President has devised and implemented a campaign marketing strategy which includes the transmission of text message through use of automatic telephone dialing systems.

26.     On October 1, 2019, Plaintiff Shell Wheeler received the following text message to his cellular phone ending in the number 9457 from the number (855) 799-8834: "Pres. Trump here. I want to see YOU Thursday, Oct. 10th at 7PM CDT at a HISTORIC rally in Minneapolis, MN. To claim your free tickets, RSVP here! bit.ly/2oewz2S."

27.     When Plaintiff Wheeler clicked the hyperlink bit.ly/2oewz2S he was directed to the Donald J. Trump campaign page, donaldJtrump.com.

28.     On October 3, 2019, Plaintiff Connor Olson received a similar text message from the number (855) 821-0665 to his wireless number ending in 7141 stating as follows: "Pres. Trump: I want to see YOU Thursday, Oct. 10th at 7PM CDT at a HISTORIC rally in Minneapolis, MN. To claim your free tickets, RSVP here! bit.ly/2LI70k7."

29.     When Plaintiff Olson clicked the hyperlink bit.ly/2LI70k7 he was directed to the Donald J. Trump campaign page, donaldJtrump.com.

30.     Similarity, on October 16, 2019, Plaintiff Dan Pederson received the following text message from the number (855) 924-0410 to his wireless number ending in 1848: "Enough hearings.  Enough investigations.  Let Rep. Craig know you stand with

President Trump right now at 202-831-3386."

31.    Defendant did not obtain express consent from Plaintiffs prior to sending the Plaintiffs the unsolicited text messages.

32.    Plaintiffs have no affiliation with the Trump For President campaign and are registered Democrats who have never provided any donations to Donald J. Trump or attended any previous campaign rally for Donald J. Trump.

33.    These unsolicited text messages placed to Plaintiffs' wireless telephones were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiffs' cellular telephones.

34.    The three ten-digit phone numbers that the text messages originated from all resulted in an error message or disconnected dial tones when called. This further proves that the text messages did not originate from cellular phones but originated from an ATDS.

35.    The existence of an ATDS is further evidenced by the fact that the text messages received by the Plaintiffs were generic as to the intended recipient, i.e., the text messages do not address Plaintiffs individually or in any fashion. Such generic and impersonal messages indicate that these text messages were sent to numerous cellular telephones in a bulk, automated fashion.

36. Furthermore, the text messages are prerecorded as prohibited by 47 U.S.C. § 227 (b)(1)(A) as identical text messages were sent to numerous individuals.

37. The identical nature of the text messages establishes that Defendant did not manually dial or manually write the text messages that were sent to Plaintiffs.

38. Plaintiffs are informed believe the spam political campaign text messages they received were generated through communication technology called peer-to-peer text messaging which is an ATDS that sends text messages to lists of cellular recipients which have been uploaded by the Defendant.

39. In addition to the October 16, 2019, text message received by Dan Pederson, Mr. Pederson also received a text message on October 10, 2019 to his cellular number ending in 1848 from the short code 88022. The text message states as follows: "Reply YES to join Trump and receive important messages. No purchase rqd. Msg&data may apply. Terms apply 88022-info.com# jointed on donaldjtrump.com.

40. At no point has Plaintiff Pederson ever voluntarily provided his 1848 number to Trump For President.

41. The "privacy policy" for the SMS campaign for Trump For President is found on the website http://www.sms-terms.com/88022. The website states: "The Program allows users to receive SMS/MMS mobile messages by users affirmatively opting into the Program, such as through online enrollment forms or by texting a keyword to 88022 or any successor short code to opt into the Program." However, Plaintiff Pederson did not affirmatively opt into the Program.

42. The unsolicited text messages placed to Plaintiff Pederson wireless telephone from the short code 88022 was placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff's cellular telephone.

43. Again, the existence of an ATDS is evidenced by the fact that the text message received by Plaintiff Pederson from the number 88022 was generic as to the intended recipient, i.e., the text messages did not address Plaintiff Pederson individually or in any fashion. Such generic and impersonal messages indicate that these text messages were sent in bulk fashion to numerous cellular telephones at one time and not manually delivered by human intervention for each and every delivery.

44. The telephone numbers that Defendant, or its agents, texted were assigned to cellular telephone services for which Plaintiffs incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

45. These telephone calls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

46. Thus, these text messages by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

47. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure

23(b)(2) and 23(b)(3) on behalf of themselves as defined as follows:

**Long Code Text Message Class**

All persons in the United States who: (1) were sent a text message placed by Defendant or its agents from a ten digit phone number; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); (4) without consent; (5) from four years prior to the filing of this Complaint through the filing of Final Approval.

**Short Code Text Message Class**

All persons in the United States who: (1) were sent a text message placed by Defendant or its agents from the short code 88022; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); (4) without consent; (5) from four years prior to the filing of this Complaint through the filing of Final Approval.

48. Defendant and its employees or agents are excluded from the Class.

49. Plaintiffs do not know the number of members in the Classes, but believe the members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

50. Plaintiffs and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiffs and members of the Classes via their cellular telephones by using unsolicited text messages, thereby causing Plaintiffs and members of the Classes to incur certain cellular telephone charges or reduce cellular telephone time for which

Plaintiffs and the Class members previously paid, and invading the privacy of said Plaintiffs and members of the Classes. Plaintiffs and the Class members were damaged thereby.

51. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the definitions of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery

52. The joinder of the members of the Classes is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court. The Classes can be identified through Defendant's records or Defendant's agents' records.

53. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Classes predominate over questions which may affect individual Class members, including the following:

    a. Whether, within four years prior to the filing of this Complaint through the date of final approval, Defendant or its agents sent text messages without the recipients' prior express consent (other than a telephone call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system, to any telephone number assigned to a cellular telephone

      service;

b. Whether the equipment Defendant, or its agents, used to make the telephone calls in question was an automatic telephone dialing system as contemplated by the TCPA;

c. Whether Defendant, or its agents, systematically sent text messages to persons who did not previously provide Defendant with their prior express consent to receive such text messages;

d. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

e. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

54. As persons that received at least one text message to their cell phone without their prior express consent, Plaintiffs are asserting claims that are typical of the Classes. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interest antagonistic to any member of the Classes.

55. Plaintiffs and the members of the Classes have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, members of the Class could afford to individually seek legal redress

for the wrongs complained of herein.

56. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

57. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of the members of the Class in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

58. This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant practices challenged herein apply to and affect each of the Class' members uniformly. Plaintiffs challenge to those practices hinges on Defendant's conduct with respect to the Class as whole, not on facts or law applicable only to Plaintiffs.

## FIRST CAUSE OF ACTION

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §§ 227 *ET SEQ.*

59. Plaintiffs incorporate by reference all of the above paragraphs of this

Complaint as though fully stated herein.

60. Each such text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

61. These text messages are analogous to a prerecorded voice made without the prior express consent of Plaintiffs.

62. Defendant's text messages were sent without the prior express consent of the Plaintiffs and the other members of the Class to receive such text messages.

63. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

64. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

65. Plaintiffs and the Classes are also entitled to seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE

## TELEPHONE CONSUMER PROTECTION ACT

## 47 U.S.C. §§ 227 *ET SEQ.*

66. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

67. Each such text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

68. These text messages are analogous to a prerecorded voice made without the prior express consent of Plaintiffs.

69. Defendant's text messages were sent without the prior express consent of the Plaintiffs and the other members of the Class to receive such text messages.

70. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

71. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided

by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

72. Plaintiffs and the Classes are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs respectfully requests the Court to grant Plaintiffs and the Class members the following relief against Defendant:

## FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ*.

73. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each members of the Class $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiffs seek injunctive relief prohibiting such conduct in the future.

75. Any other relief the Court may deem just and proper.

# SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

76.  As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

77.  Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

78.  Any other relief the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated this 17th day of October, 2019.

By: *s/ Thomas J. Lyons Jr.*
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 0249646
CONSUMER JUSTICE CENTER P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
tommy@consumerjusticecenter.com

Ronald A. Marron, Esq.
Alexis M. Wood, Esq.
Kas L. Gallucci, Esq.
651 Arroyo Drive
San Diego, California 92103 Telephone: (619) 696-9006
ron@consumersadvocates.com

*alexis@consumeradvocates.com*
*kas@consuneradvocates.com*
*(TO BE ADMITTED PRO HAC VICE)*

***ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASS***