UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DAN PEDERSON, CONNOR OLSON, and SHELL WHEELER, *individually and on behalf of all those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC.,<br><br>Defendant. | Civil No. 19-2735 (JRT/HB)<br><br>**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS** |

Alexis M. Wood and Kas Gallucci, **LAW OFFICES OF RONALD A. MARRON**, 651 Arroyo Drive, San Diego, CA 92103, for plaintiffs.

Brett Shumate, **JONES DAY**, 51 Louisiana Ave, N.W., Washington, DC 20001, for defendant.

Three individuals allege that they received unsolicited text messages from Donald J. Trump for President, Inc. (the "Trump Campaign"), in violation of the Telephone Consumer Protection Act ("TCPA"). The Trump Campaign brings a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), arguing that Plaintiffs failed to allege an injury or a connection to the Trump campaign and therefore lack standing, and under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs failed to adequately allege the use of an autodialer and therefore failed to state a TCPA claim. Additionally, the Trump Campaign moves under

the Federal Arbitration Act to compel arbitration of Plaintiff Pederson's claims, arguing he consented to the texts and is subject to an arbitration agreement.

Because Plaintiffs have adequately alleged an injury, a connection to the Trump Campaign, and the use of an autodialer, and because the Trump Campaign has not demonstrated that Plaintiff Pederson entered into any agreement with the Campaign, the Court will deny the Trump Campaign's motion.

## BACKGROUND

On October 1, 2019, Plaintiff Shell Wheeler received a text message from (855) 799-8834 which read, "Pres. Trump here. I want to see YOU Thursday, Oct. 10th at 7PM CDT at a HISTORIC rally in Minneapolis, MN. To claim your free tickets, RSVP here! bit.ly/2oewz2S." (Compl. ¶ 26, Oct. 18, 2019, Docket No. 1.)  When he clicked the link, he was directed to the Trump Campaign website.  (*Id.* ¶ 27.)

On October 3, 2019, Plaintiff Connor Olson received a text message from (855) 821-0665, which read, "Pres. Trump: I want to see YOU Thursday, Oct. 10th at 7PM CDT at a HISTORIC rally in Minneapolis, MN. To claim your free tickets, RSVP here! bit.ly/2LI70k7." (*Id.* 28.)  When he clicked the link, he was directed to the Trump Campaign website.  (*Id.* ¶ 29.)

On October 10, 2019, Plaintiff Dan Pederson received a text message from 88022 which read, "Reply YES to join Trump and receive important messages. No purchase rqd. Msg&data may apply. Terms apply 88022-info.com# jointed on donaldjtrump.com."  (*Id.*

¶ 39.)  On October 16, he received a text from (855) 924-0410, which read, "Enough hearings. Enough investigations. Let Rep. Craig know you stand with President Trump right now at 202-831-3386."  (*Id.* ¶ 30.)

In each case, a call to the three ten-digit numbers resulted in an error message or a disconnected dial tone.  (*Id.* ¶ 34.)  Plaintiffs are not affiliated with the Trump for President Campaign and allege that they did not consent to receive any text messages. (*Id.* ¶¶ 31-32.)

The Campaign argues that on the day Pederson received the first alleged text message, an individual searched Google for the Trump Campaign, arrived at the Campaign website, and entered personal information in order "to receive updates directly."  (Decl. of Michael S. Glassner in Support of Mot. to Dismiss ("Glassner Decl.") ¶¶ 5-8, Exs. A-B, Feb. 24, 2020, Docket No. 18.)  The individual then filled out the information form as Daniel Pederson of Minneapolis, MN 55414, and provided a phone number and an email address.  (*Id.* Ex. A.)  Finally, the Campaign asserts in doing so, the individual expressly consented to receive calls and texts, and agreed to the linked terms and conditions.  (*Id.* ¶¶ 8-9.)

Pederson denies that he performed this Google search or entered any information on the Trump Campaign website.  (Decl. of Dan Pederson in Opp'n to Mot. to Dismiss, ¶¶ 3-7,  March 30, 2020, Docket No. 29.)  Pederson also notes that all of the information, except for the phone number, is incorrect.  (*Id.*)  Pederson denies consenting to receive

text messages and denies ever having seen the Trump Campaign's Terms and Conditions or Terms of Service. (*Id.* ¶¶ 8-14.) Pederson points out that the Campaign did not provide location or IP data that could confirm that the individual was him and not another individual or bot.

Plaintiffs bring putative class action claims under the Telephone Consumer Protection Act, arguing that the Trump Campaign improperly used automated telephone equipment to send unsolicited text messages in violation of 47 U.S.C. § 227(b)(1). The Trump Campaign filed a Motion to Dismiss under Rule 12(b)(1) arguing that Plaintiffs lack standing and under Rule 12(b)(6) arguing that the Complaint fails to plausibly state a claim. In the alternative, the Trump Campaign moves to compel arbitration of Pederson's claims under the Federal Arbitration Act.[1]

**ANALYSIS**

**I.   MOTION TO DISMISS**

**A. Standard of Review**

When a defendant brings a Rule 12(b)(1) challenge to subject matter jurisdiction based on a deficiency in the pleadings, the court uses the same standard of review used

---

[1] The Trump Campaign also argues that the Court should stay the proceedings pending a Supreme Court decision on the constitutionality of the TCPA in *Barr v. American Association of Political Consultants*. *See* 140 S. Ct. 812, 205 L. Ed. 2d 449 (2020) (granting Petition for writ of certiorari). The Court will decline to issue a stay based pending the outcome in that case because the Court finds that it is unlikely that the Supreme Court will void the TCPA in its entirety.

in Rule 12(b)(6) motions. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 520–21 (8th Cir. 2007). "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to [subject matter] jurisdiction), rather than facts that are merely consistent with such a right." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g., Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). To avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Standing Under Rule 12(b)(1)

The Trump Campaign alleges that Plaintiffs have failed to demonstrate standing because they have failed to allege a sufficient injury, and because they have failed to allege that one of the text messages is traceable to the Trump Campaign.

### 1. Injury

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). "The harm to be remedied by the TCPA was 'the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements.'" *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

The Trump Campaign urges the Court to find that unsolicited text messages are less burdensome and injurious than phone calls, voicemails, and faxes, and that a single text message is not enough to create standing. There is some basis for this argument – the Eleventh Circuit has found that "receiving a single text message" is insufficient to constitute an injury under the TCPA. *Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019). However, the majority of courts to consider the issue have found that unsolicited text messages present "the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 677 (2019).[2]

---

[2] *See also Van Patten*, 847 F.3d at 1043 ("[T]he telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA."); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) ("A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.")

Indeed, the Court finds no marked difference between the intrusiveness of a call and a text.  The Campaign urges that text messages may be ignored, but so may telephone calls.  And while the Campaign reasonably argues that one text message, without more, is not significant enough to constitute an injury for the purposes of standing, the TCPA has altered that analysis.  *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) ("Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.") (cleaned up).[3] The Court agrees with the logic of the majority of circuits and finds that a text message, while a different format that a phone call, voicemail, or fax, presents at least an equivalent level of disturbance and injury, and thus constitutes a cognizable injury under the TCPA.

Accordingly, the Court finds that Plaintiffs have sufficiently alleged an injury, and the Court will deny the Trump Campaign's Motion to Dismiss on this ground.

### 2. Traceable to the Trump Campaign

In addition to injury, standing requires a plaintiff to demonstrate "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

---

[3] *See also Coal. for Env't v. Volpe*, 504 F.2d 156, 168 (8th Cir. 1974) ("The court is not to consider the weight or significance of the alleged injury, only whether it exists.")

560–61 (1992) (cleaned up).  However, the causal connection must merely be alleged with sufficient "factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiffs allege that Pederson received a text message, sent from (855) 924-0410, that read, "Enough hearings. Enough investigations. Let Rep. Craig know you stand with President Trump right now at 202-831-3386."[4]  The Trump Campaign argues that unlike the other messages, this one does not claim to have been sent from the Campaign, does not contain a link to its website, and therefore is not fairly traceable to the Campaign.[5]

The Campaign argues that a recipient might reasonably draw other inferences from this text message, including that it was sent by, or on behalf of, "Rep. Craig."  However, Pederson had received a text just a few days earlier from an unknown number, which the Campaign concedes is fairly traceable to the Campaign.  It is plausible that a second unsolicited text, from an unknown number, including the phrase "stand with President Trump right now," and following shortly after an initial unsolicited text from the

---

[4] The Trump Campaign concedes that the three other text messages at issue are fairly traceable to the Trump Campaign.

[5] In its Reply, the Trump Campaign now "confirm[s] that the Campaign did not send the other alleged email to Pederson, 'Enough hearings.  Enough investigations.  Let Rep. Craig know you stand with President Trump . . . .'"  However, the Campaign's denial is not relevant at the Motion to Dismiss phase of litigation, when the Court must accept Plaintiffs' allegations as true.  *Iqbal*, 556 U.S. at 678.

Campaign, is traceable to the Campaign, even if it does not include a link to the Campaign website.

Accordingly, Plaintiffs have plausibly alleged a connection between the text and the Trump Campaign, and the Court will deny the Campaign's Motion to Dismiss on this ground.

### C. Failure to State a Claim Under Rule 12(b)(6)

The Trump Campaign argues that Plaintiffs have failed to allege the use of an autodialer and therefore failed to state a TCPA violation under Rule 12(b)(6).

#### 1. Detail of Allegations

The Complaint includes several allegations regarding the use of an autodialer. Plaintiffs allege that the Complaint sends text messages "through use of automatic telephone dialing systems" which used "'an artificial or prerecorded voice' system" and had the "capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiffs' cellular telephones." (Compl. ¶¶ 25, 33). Specifically, Plaintiffs allege that the Campaign uses "peer-to-peer text messaging which is an [automatic telephone dialing system] that sends text messages to lists of cellular recipients which have been uploaded by the Defendant." (*Id.* ¶ 38.) "Plaintiffs allege this to be so because "[t]he three ten-digit phone numbers that the text messages originated from all resulted in an error message or disconnected dial tones when called" and because "the text messages received by the Plaintiffs were generic as to the intended

recipient, i.e., the text messages do not address Plaintiffs individually or in any fashion." (*Id.* ¶¶ 34-35, 43.)

The Trump Campaign correctly argues that some courts have required more specific allegations of would-be TCPA plaintiffs. However, at the motion to dismiss phase, it seems reasonable to require "plaintiff to provide the circumstances surrounding the calls that led him to believe the defendant had used an ATDS," without requiring him to "elaborate on the specific technical details of a defendant's alleged ATDS." *Ueckert v. State Farm Bank, F.S.B.,* No. 5:17-CV-05094, 2017 WL 3981136, at *2 (W.D. Ark. Sept. 11, 2017) (quoting *Johansen v. Vivant, Inc.,* 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012). Without discovery, Plaintiffs have no ability, beyond attempting to call the texting number and comparing text messages with one another, to determine the mechanics of the Trump Campaign's dialing machinery. Their allegations are plausible, and that is all that is required at this phase of litigation.

      **2.**      **Number Generation**

The Trump Campaign also argues that because Plaintiffs have alleged that the Campaign uploaded lists of numbers, the Campaign's system cannot be an autodialer. At least one circuit has explicitly found that an autodialer must randomly or sequentially generate numbers, and not use an uploaded database or a stored list. *See Glasser v. Hilton Grand Vacations Co., LLC,* 948 F.3d 1301, 1304-05 (11th Cir. 2020). However, other circuits have found to the contrary. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041,

1052 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019) ("[W]e conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator' but also includes devices with the capacity to dial stored numbers automatically.")  The Second Circuit recently followed the Ninth Circuit, finding that "[a]s the FCC additionally clarified in 2012, the statutory definition of an ATDS 'covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.'" *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) (emphasis omitted) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15392 n.5 (2012)).

The Eighth Circuit has not yet weighed in on this issue, and the Court finds the logic of the Second and Ninth Circuits to be more persuasive.  Under the Trump Campaign's theory (and Eleventh Circuit precedent), software that could dial a number at random from a phonebook (imagining that there were still such things as phonebooks) would not constitute an autodialer, because a phonebook is nothing more than a list of numbers compiled by humans.  The Court sees no reason why software must generate numbers itself, and will not read such a limitation into the text of the statute.

Accordingly, the Court finds that Plaintiffs allegations sufficiently describe an autodialer, and the Court will deny the Campaign's Motion to Dismiss on this ground.

**II.    MOTION TO COMPEL ARBITRATION**

The Trump Campaign additionally argues that the Court should compel arbitration or dismiss Plaintiff Pederson's claims because Pederson purposefully signed up with the Trump Campaign, consented to the text messages, and agreed to arbitration.

**A.  Arbitration Agreement**

A party who believes that a dispute is subject to arbitration may move for an order compelling arbitration and staying the proceedings.  9 U.S.C. § 3.  On a motion to compel arbitration under the Federal Arbitration Act ("FAA"), the Court "does not determine the merits of the substantive issues," but simply "whether the parties have agreed to submit a particular grievance to arbitration." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008).  When considering such a motion, the Court is therefore limited to determining: (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the specific dispute is within the scope of that agreement. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).  "The party seeking to compel arbitration 'must demonstrate that a valid agreement to arbitrate exists.'" *ATS Int'l, Inc. v. LAP Distribution PTE Ltd.*, No. 11-CV-2207 MJD/LIB, 2011 WL 6960971, at *3 (D. Minn. Dec. 2, 2011), *report and recommendation adopted*, No. CIV. 11-2207 MJD/LIB, 2012 WL 32932 (D. Minn. Jan. 6, 2012) (quoting *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011)).

The first question for the Court is whether there is any contract at all.  A contract cannot exist absent "a meeting of the minds concerning its essential elements." *Minneapolis Cablesystems v. City of Minneapolis*, 299 N.W.2d 121, 122 (Minn. 1980).  The Trump Campaign has provided evidence that an individual entered Daniel Pederson's name into the Campaign's database, along with Pederson's actual cell phone number.  Pederson, however, disputes that this person was him.  The Campaign has not provided any additional information, such as location or IP data, to demonstrate that Pederson agreed to anything at all.  The Campaign may eventually determine that it was Pederson who entered his information, but at this point the Campaign has not carried its burden to demonstrate there was a valid contract with Pederson.[6]

Because the Trump Campaign has not carried its burden to demonstrate that Pederson entered into any agreement, including a valid arbitration agreement, the Court will deny the Campaign's Motion.

**B. Consent**

The Trump Campaign similarly argues that the Court should dismiss Plaintiff Pederson because he consented to receive text messages from the Campaign.  To the extent the Campaign argues that it acted in good faith belief that Pederson consented, it

---

[6] Accordingly, the Court need not reach the issue of the type of "clickwrap" agreement or whether or not the links to terms and conditions were sufficiently noticeable.

remains free to bring that affirmative defense at summary judgment. Because the Campaign has not shown that it was Pederson who consented to receive texts, the Court declines to dismiss Pederson.

## CONCLUSION

Because Plaintiffs have adequately alleged an injury, a connection to the Trump Campaign, and the use of an autodialer, and because the Trump Campaign has not demonstrated that Plaintiff Pederson entered into any agreement with the Campaign, the Court will deny the Trump Campaign's Motion to Dismiss and Compel Arbitration.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Compel Arbitration, or Stay [Docket No. 16] is **DENIED**.

DATED: June 8, 2020
in Minneapolis, Minnesota at 2:10PM

_____John H. Tunheim_____
JOHN R. TUNHEIM
Chief Judge
United States District Court