# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dan Pederson *et al.*,

          Plaintiffs,

v.

Donald J. Trump for President, Inc., a
principal campaign committee, and
American Made Media Consultants, LLC,

          Defendants.

Case No. 0:19-cv-02735-JRT-HB

**DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S MEMORANDUM
IN SUPPORT OF RULE 12(b)(1), 12(b)(2), & 12(b)(6) MOTION TO DISMISS
AMENDED COMPLAINT REGARDING PLAINTIFFS OLSON AND WHEELER**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 4

STANDARD OF REVIEW ............................................................................. 7

ARGUMENT ................................................................................................. 10

I.     The Court Should Dismiss Olson's and Wheeler's TCPA Claims
       Because The Campaign Cannot Be Held Liable For Violating An
       Unconstitutional Law ....................................................................... 10

II.    The Court Lacks Personal Jurisdiction Over Olson's Claims ................... 18

III.   The Court Should Dismiss Olson's And Wheeler's Claims Under
       New York's Uniform Voidable Transactions Act .................................... 21

       A.     Plaintiffs Fail to Demonstrate the UVTA Applies in the First
              Instance ................................................................................... 21

       B.     Plaintiffs Fail to Adequately Plead the Actual Fraudulent
              Transfer Claim ......................................................................... 23

       C.     Plaintiffs Seek Extraordinary Relief With No Supporting
              Facts ........................................................................................ 26

       D.     In The Alternative, The Court Should Stay Proceedings on
              Plaintiffs' UVTA Claims Under The Doctrine of Primary
              Jurisdiction ............................................................................. 29

CONCLUSION ............................................................................................. 32

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alphas Capital Anstalt v. Shiftpixy, Inc.*,
  432 F. Supp. 3d 326 (S.D.N.Y. 2020).................................................................. 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 8, 23

*Barr v. Am. Ass'n of Political Consultants*,
  140 S. Ct. 2335 (2020) ................................................................. 1, 4, 10, 14

*Bates v. State Bar of Ariz.*,
  433 U.S. 350 (1977) ..................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 8, 22, 23

*Bond v. United States*,
  564 U.S. 211 (2011) ..................................................................................... 12

*Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*,
  137 S. Ct. 1773 (2017) ............................................................. 3, 19, 20, 21

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ........................................................................................ 26

*Capital Ventures Int'l v. Republic of Argentina*,
  443 F.3d 214 (2d Cir. 2006)......................................................................... 27

*Cox Broadcasting Corp. v. Cohn*,
  420 U.S. 469 (1975) ..................................................................................... 12

*Creasy v. Charter Commc'ns, Inc.*,
  No. CV 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) ................. 2, 15, 16, 17

*Cunningham v. Carribean* [sic] *Cruise Line, Inc.*,
    2015 WL 475271 (M.D. Tenn. Feb. 4, 2015) ............................................................ 19

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ........................................................................................................ 18

*DeBruce Grain, Inc. v. Union Pac. R. Co.*,
    149 F.3d 787 (8th Cir. 1998) ................................................................... 29, 31, 32

*Dever v. Hentzen Coatings, Inc.*,
    380 F.3d 1070 (8th Cir. 2004) ....................................................................................... 7

*Duke v. S. Cent. Bell, Inc.*,
    No. CIV. A. 90-3088, 1991 WL 42546 (E.D. La. Mar. 21, 1991) ........................ 30, 31

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ........................................................................................................ 27

*Friends of Phil Gramm v. Americans for Phil Gramm in '84*,
    587 F. Supp. 769 (E.D. Va. 1984) ............................................................................... 30

*Gabauer v. Woodcock*,
    594 F.2d 662 (8th Cir. 1979) ........................................................................................ 30

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ........................................................................................ 17

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................................................................ passim

*Hastings v. Triumph Prop. Mgmt. Corp.*,
    2015 WL 9008758 (S.D. Cal. Dec. 15, 2015) ............................................................ 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ........................................................................................................ 20

*Hood v. Am. Auto Care, LLC*,
    No. 18-CV-02807, 2020 WL 1333091 (D. Colo. Mar. 23, 2020) ........................ 19, 20

*In re First Central Financial Corp.*,
    377 F. 3d 209 (2d Cir. 2004)..................................................................... 1, 21, 28

*In re Petters Company, Inc.*,
    557 B.R. 721 (Bankr. D. Minn. 2016) .................................................... 23, 24

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005).......................................................................... 23

*In re Vivaro Corp.*,
    524 B.R. 536 (Bankr. S.D.N.Y. 2015) ........................................................ 24

*Iverson v. United States*,
    973 F.3d 843 (8th Cir. 2020) ...................................................................... 21

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ................................................................. 19, 20

*Knotts v. Nissan N. Am., Inc.*,
    346 F. Supp. 3d 1310 (D. Minn. 2018) ...................................................... 18

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)............................................................................... 11, 14

*Lidenbaum, v. Realgy, LLC*,
    No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ................. 2, 16, 17

*Marriott v. County of Montgomery*,
    426 F. Supp. 2d 1 (N.D.N.Y. 2006)............................................................ 27

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995)................................................................................... 12

*Michaels v. Micamp Merch. Servs.*,
    2013 WL 5970340 (W.D. Pa. Nov. 8, 2013) .............................................. 19

*Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*,
    63 F.3d 694 (8th Cir. 1995) ........................................................................ 18

*Mitchael v. Colvin*,
    809 F.3d 1050 (8th Cir. 2016) ...................................................................... 7

*N.A.A.C.P. v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) .................................................................................. 12

*Nat'l Republican Cong. Comm. v. Legi-Tech Corp.*,
    795 F.2d 190 (D.C. Cir. 1986) .............................................................. 30, 32

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .................................................................................. 12

*Papish v. Bd. of Curators of Univ. of Missouri*,
    410 U.S. 667 (1973) .................................................................................. 12

*Pickering v. ADP Dealer Servs., Inc.*,
    No. 12 C 6256, 2013 WL 996212 (N.D. Ill. Mar. 13, 2013) ...................... 19

*Polito v. Skamania Cty.*,
    No. C15-5542 RBL, 2016 WL 454844 (W.D. Wash. Feb. 5, 2016) ............ 9

*Ray v. Ray*,
    799 F. App'x. 29 (2d Cir. 2020) ........................................................... 8, 23

*Reiter v. Cooper*,
    507 U.S. 258 (1993) ............................................................................ 29, 30

*Sessions v. Morales-Santana*,
    137 S. Ct. 1678 (2017) .................................................... 2, 11, 14, 17

*Signal Capital Corp. v. Frank*,
    895 F. Supp. 62 (S.D.N.Y. 1995) ............................................................ 27

*Stalley v. Catholic Health Initiatives*,
    509 F.3d 517 (8th Cir. 2007) ..................................................................... 7

*Stoebner v. Opportunity Finance, LLC*,
    909 F.3d 219 (8th Cir. 2018) ................................................................... 23

*Summerhill v. Terminix, Inc.*,
    637 F.3d 877 (8th Cir. 2011) ........................................................................ 8

*The Florida Star v. B.J.F.*,
    491 U.S. 524 (1989) .................................................................................... 12

*Triemert v. Washington Cty.*,
    No. 13-CV-1312, 2013 WL 6729260 (D. Minn. Dec. 19, 2013) .................... 9

*U.S. ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*,
    915 F.3d 1158 (8th Cir. 2019) ................................................................. 9, 22

*United States v. Baucum*,
    80 F.3d 539 (D.C. Cir. 1996) (per curiam) .................................................. 7

*United States v. Lundergan*,
    No. 5:18-CR-00106, 2019 WL 3804239 (E.D. Ky. Aug. 13, 2019) ............ 31

*United States v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956) .................................................................................... 30

*Varsames v. Palazzolo*,
    96 F. Supp. 2d 361 (S.D.N.Y. 2000) ..................................................... 27, 28

*Wells Dairy, Inc. v. Food Movers Int'l, Inc.*,
    607 F.3d 515 (8th Cir. 2010) .................................................................. 7, 8

*Welsh v. United States*,
    398 U.S. 333 (1970) .................................................................................... 11

*Whiddon v. Chase Home Fin., LLC*,
    666 F. Supp. 2d 681 (E.D. Tex. 2009) .................................................... 9, 23

*Wood ex rel. U.S. v. Applied Research Assocs., Inc.*,
    328 F. App'x 744 (2d Cir. 2009) .......................................................... 9, 23

*Zean v. Fairview Health Servs.*,
    858 F.3d 520 (8th Cir. 2017) ...................................................................... 8

S<span>TATUTES</span>

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................. passim

52 U.S.C. § 30109(a)(1) ................................................................................. 5

52 U.S.C. § 30114(a)(6) .............................................................................. 24

Federal Election Campaign Act of 1971 ............................................... 24, 30

New York Uniform Voidable Transactions Act,
   N.Y. Debt. & Cred. L. §§ 270–281 ................................................. passim

Telephone Consumer Protection Act ........................................................ passim

O<span>THER</span> A<span>UTHORITIES</span>

11 C.F.R. § 113.2 ........................................................................................ 24

2 Newberg on Class Actions § 6:25 (5th ed.) ............................................. 18

Black's Law Dictionary (11th ed. 2019) ............................................... 21, 22

*Expenditures; Reports by Political Committees; Personal Use of Campaign
   Funds*, 60 Fed. Reg. 7,862, 7,867 (Feb. 9, 1995) ........................................ 24

Wright & Miller, Federal Practice & Procedure § 2983 (1999) ................. 28

## INTRODUCTION

The Court should dismiss Plaintiff Shell Wheeler's and Plaintiff Connor Olson's Amended Complaint for three reasons, none of which were addressed in the Court's order denying Donald J. Trump for President, Inc.'s (the "Campaign") motion to dismiss Plaintiffs' original complaint.[1]

*First*, the Campaign cannot be held liable for violating the unconstitutional version of the Telephone Consumer Protection Act ("TCPA") in effect when the Campaign sent the text messages to Olson and Wheeler. Less than a month after this Court denied the Campaign's first motion to dismiss or stay this case, the Supreme Court declared a provision of the TCPA unconstitutional. In *Barr v. American Association of Political Consultants*, six justices held that 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA—the same statute at issue in this case—violates the First Amendment. 140 S. Ct. 2335 (2020). The Court concluded that the statute was content based because it allowed autodialed calls to collect a government debt, but it did not allow such calls when they were made for political purposes—much like the text messages at issue in this case. *See id*. at 2347. The Court then held that § 227(b)(1)(A)(iii) of the TCPA failed First Amendment scrutiny.

The Supreme Court's decision in *Political Consultants* compels dismissal of Olson's and Wheeler's lawsuit. Olson and Wheeler claim that the Campaign violated

---

[1] In light of the Eighth Circuit's order staying Plaintiff Dan Pederson's involvement in the district court litigation, this motion is filed only with respect to Plaintiff Olson's and Plaintiff Wheeler's claims. *See* Order, No. 20-2239 (8th Cir. Aug. 25, 2020). The Campaign expressly reserves the right to move to dismiss Pederson's claims if the Eighth Circuit lifts the stay and his claims move forward in this Court.

§ 227(b)(1)(A)(iii) by sending text messages to them and a putative class between 2015 and 2019. *See* Am. Compl. ¶¶ 32, 34, 61. But it is well established that a defendant cannot be held liable for conduct that was proscribed by an unconstitutionally discriminatory law. *Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972). Under this established precedent, the Campaign cannot be held liable as a matter of law for violating § 227(b)(1)(A)(iii) at a time when that statute unconstitutionally restricted speech. Two district courts have already concluded that *Political Consultants* compels dismissal of cases just like this one. *See Creasy v. Charter Commc'ns, Inc.*, No. CV 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020); *Lidenbaum, v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020).

Olson's and Wheeler's claims cannot be salvaged by the Supreme Court's decision to invalidate and prospectively sever the government-debt exception from the rest of the TCPA. This Court accurately predicted that "it is unlikely that the Supreme Court will void the TCPA in its entirety," but that is not the end of the matter. Mem. Op. & Order Denying Mot. to Dismiss at 4 n.1, ECF No. 38. As the Supreme Court recently explained, one held liable "under a law classifying on an impermissible basis" may escape that liability "without regard to the manner in which the legislature might subsequently cure the infirmity." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017). The Supreme Court's decision to prospectively sever the statute does not affect the retrospective liability of callers like the Campaign who acted at the time the statute unconstitutionally restricted speech. *See Grayned*, 408 U.S. at 107 n.2; *Lidenbaum*, 2020 WL 6361915, at *3.

2

*Second*, Olson failed to demonstrate personal jurisdiction to sue the Campaign in this Court. The text message giving rise to Olson's claims was sent to a phone number with a Wisconsin area code. The Campaign's text message to Olson was not directed to Minnesota, and Olson's claims do not "aris[e] out of" the Campaign's attempts to contact Minnesota residents. *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). The substantial weight of authority holds that sending a communication to a forum resident with a non-forum-state area code is insufficient to vest the forum state with personal jurisdiction over a plaintiff's claim.

*Third*, Olson and Wheeler attempt to manipulate the New York Uniform Voidable Transactions Act (the "UVTA")[2] to bolster their TCPA claims and obtain extraordinary injunctive and equitable relief against a federal campaign's expenditures on campaign services. But the Amended Complaint is devoid of the necessary facts to satisfy the requisite pleading standard to assert a UVTA claim, let alone the Plaintiffs' laundry list of injunctive and equitable relief that depends on the existence of a viable UVTA claim. The Plaintiffs' tortured UVTA theory belies their ultimate objective: restrain an incumbent President's ability to spend money to connect with voters in furtherance of his re-election campaign in a presidential election year. The Court should dismiss Plaintiffs' UVTA claims.

---

[2] The UVTA was adopted by New York on December 6, 2019, and was effective as of April 4, 2020. N.Y. Debt. & Cred. L. §§ 270–281.

3

## BACKGROUND

The TCPA makes it unlawful for any person to call a cellular telephone using an "automatic telephone dialing system" (also known as an "ATDS" or "autodialer") without the called party's prior express consent.    47 U.S.C. § 227(b)(1)(A)(iii).    The constitutionality of § 227(b)(1)(A)(iii) has been a source of debate since 2015.  That year, Congress amended the TCPA by exempting calls "made solely to collect a debt owed to or guaranteed by the United States."  *Id*.  The Supreme Court resolved this debate in a suit seeking prospective relief against the government in the form of a declaratory judgment. In *Political Consultants*, the Court declared § 227(b)(1)(A)(iii) unconstitutional, invalidated the government-debt exception, and severed that provision from the rest of the TCPA.  *See* 140 S. Ct. at 2347–49, 2356 (Kavanaugh, J.) (plurality op.); *id.* at 2356–57 (Sotomayor, J., concurring in the judgment).  But the Court had no occasion to consider the retrospective liability of defendants who violated § 227(b)(1)(A)(iii) in the past because the plaintiffs in *Political Consultants* did not raise that issue in their suit for prospective relief against the government.

On June 8, 2020, this Court denied the Campaign's motion to dismiss the original complaint, compel Pederson to arbitrate, or stay the case pending a decision by the Supreme Court in *Political Consultants*.  *See* Mem. Op. & Order Denying Mot. to Dismiss, ECF No. 38.  The Campaign appealed the order denying the motion to compel arbitration. On July 6, the Supreme Court decided *Political Consultants*.  On August 25, 2020, the Eighth Circuit granted the Campaign's motion to stay proceedings on Pederson's claims pending the arbitrability appeal.  *See* Order, No. 20-2239 (8th Cir. Aug. 25, 2020).

In their Amended Complaint, Olson and Wheeler allege that the Campaign violated § 227(b)(1)(A)(iii) by using an autodialer to send them each a single political text message in October 2019.  *See* Am. Compl. ¶¶ 32, 34.  In particular, Olson alleges that he "is, and at all times mentioned herein was, a resident of Ramsey County, State of Minnesota."  *Id.* ¶ 14.  But Olson is actually a Wisconsin resident using a cellular phone registered in Wisconsin to a Wisconsin area code number (715).  Ellison Decl.[3] Ex. A.  Olson's driver's license shows he resides in Wisconsin.  *Id.* at Ex. B. (filed under seal).  The account holder for Olson's AT&T plan also resides in Wisconsin.  *Id.* at Ex. C.  His cell phone "was purchased at the Eau Claire Golf Road AT&T" in Eau Claire, Wisconsin.  *Id.* at Ex. A.  Counsel for Olson represents that "Plaintiff Olson, at the time of the text message and the filing of this case[,] was living and working in Minnesota.  He has since moved to Waukesha, Wisconsin for graduate studies."  ECF 81, at 5 n.2.

In addition, apparently based entirely off their reading of some media accounts of a misguided complaint filed this summer with the Federal Election Commission ("FEC"),[4] Olson and Wheeler allege that the Campaign transferred "large unexplained payments" totaling at least $10,057,897.24 to the Campaign's in-house media services vendor American Made Media Consultants, LLC ("AMMC") from November 2019 to July 2020.  Am. Compl. ¶ 52.  In the same paragraph, Plaintiffs admit that the payments to AMMC

---

[3] Declaration of Benjamin L. Ellison, filed contemporaneously herewith.

[4] Anyone can file an FEC complaint at any time.  *See* 52 U.S.C. § 30109(a)(1).  The filing of a complaint with the FEC does not signify that the complaint has any merit whatsoever.

were disclosed on FEC reports and described as "SMS Advertising" or similar language. *Id.* Plaintiffs dedicate eight paragraphs citing to news articles stating that AMMC's purpose and that of the payments made by the Campaign to AMMC are to provide services to implement the Campaign's marketing strategy, including by purchasing digital, radio, and television advertising. *See id.* ¶¶ 31, 85–92. Moreover, the news articles quoted in the Amended Complaint state that AMMC's services enable the Campaign to "save . . . money by acting as a clearinghouse for spending that would otherwise be done by outside vendors who typically take commissions on such purchases." *Id.* ¶¶ 86, 87.

Plaintiffs allege—"on information and belief"—that the Campaign's assets are located and maintained in New York and, as such, the Campaign's transfers to AMMC qualify as voidable transfers under the UVTA. *Id.* ¶ 102. Plaintiffs allege that the Campaign transferred its assets to AMMC "with the intent to hinder, delay and defraud." *Id.* ¶ 103. Plaintiffs similarly allege that the Campaign regularly and continuously transfers its assets to Parscale Strategy, LLC—another primary vendor of political strategy and digital marketing consulting services to the Campaign—and others with same fraudulent intent. *Id.* ¶¶ 85, 103.[5] According to Plaintiffs, the Campaign's transfers to its services vendors, AMMC, Parscale Strategy, and others, "inevitably reduce the total amount of asserts [sic] available to satisfy a judgment in favor of Plaintiffs and members of the Classes." *Id.* ¶ 107. Plaintiffs assert their UVTA claim "to preserve funds to compensate

---

[5] Plaintiffs cite an additional eight paragraphs worth of news articles claiming that the transfers from the Campaign to Parscale Strategy, LLC were primarily for salaries and overhead expenses for Campaign personnel. *Id.* ¶¶ 93–101.

Plaintiffs and other members of the Classes for TCPA violations [and] to prevent funds from being transferred From Trump For President to AMMC, Parscale Strategy and others." *Id.* ¶ 104.

## STANDARD OF REVIEW

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1), the party seeking to invoke jurisdiction bears the burden of proof. *Mitchael v. Colvin*, 809 F.3d 1050, 1053 (8th Cir. 2016). The Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). "[O]nce a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)." *United States v. Baucum*, 80 F.3d 539, 541–42 (D.C. Cir. 1996) (per curiam).

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff "must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state.'" *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citation omitted). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). The plaintiff's showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (citation and internal quotation marks omitted).

7

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 525 (8th Cir. 2017) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading need not include "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* This means "threadbare recitals of the elements of a cause of action's elements, supported by mere conclusory statements, do not suffice." *Id.* The well-pleaded allegations must move the claim "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For allegations sounding in fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In other words, Rule 9(b) requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (citation omitted); *Ray v. Ray*, 799 F. App'x. 29, 31–32 (2d Cir. 2020) (affirming dismissal of fraudulent transfer claim under New York law and noting that "[t]o survive a motion to dismiss, the facts supporting general allegations of 'actual intent to hinder, delay, or defraud' must be 'pled with specificity.'") (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)). As a general matter, allegations of fraud based on information and belief do not satisfy the particularity requirement of Rule 9(b). *See U.S. ex rel. Strubbe v.*

8

*Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158, 1165 (8th Cir. 2019) (district court properly dismissed count under Rule 9(b) where plaintiffs plead "key facts upon information and belief, without providing 'a statement of facts on which the belief is founded'"); Wright & Miller, Federal Practice & Procedure § 1298 (4th ed. 2020).

Rule 12(b)(6) also protects a defendant from the burden of discovery where a plaintiff's speculative or conclusory allegations fail the pleading standard, particularly Rule 9(b). *See Triemert v. Washington Cty.*, No. 13-CV-1312 PJS/JSM, 2013 WL 6729260, at *1 (D. Minn. Dec. 19, 2013), *aff'd*, 571 F. App'x 509 (8th Cir. 2014) ("[B]efore any litigant . . . is entitled to take discovery, the plaintiff must first plead a plausible claim for relief."); *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) ("One of the [further] purposes of Rule 9(b) is to discourage the filing of complaints as a pretext for discovery of unknown wrongs. [A plaintiff's] contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage."); *see also Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 691 (E.D. Tex. 2009) ("Rule 9(b) does not permit a party to make conclusory allegations and then, through the discovery process, gain more specific information and amend his pleadings to satisfy the particularity requirement."); *Polito v. Skamania Cty.*, No. C15-5542 RBL, 2016 WL 454844, at *2 (W.D. Wash. Feb. 5, 2016) ("Rule 12(b)(6) is meant to preclude just these types of speculative and implausible claims, early in the litigation, to not unfairly burden the defendant with discovery.").

## ARGUMENT

**I.    The Court Should Dismiss Olson's and Wheeler's TCPA Claims Because The Campaign Cannot Be Held Liable For Violating An Unconstitutional Law.**

The Court lacks jurisdiction over Olson's and Wheeler's TCPA claims (or they fail to state a claim) because the Campaign cannot be held liable for violating an unconstitutional law.  The Supreme Court has already declared that § 227(b)(1)(A)(iii) of the TCPA was unconstitutional at the time when the Campaign allegedly texted Olson, Wheeler, and the putative class.  Although the Supreme Court prospectively severed the government-debt exception from the rest of the TCPA, the Court did not address the retrospective liability of companies that violated § 227(b)(1)(A)(iii) in the past.  But the Court's longstanding precedent—and recent persuasive authority from two district courts—confirms that the Campaign cannot be held liable for violating a statute that was unconstitutional when it sent text messages during the 2015–2019 class period.  The Court should therefore dismiss Olson's and Wheeler's claims either for lack of jurisdiction or for failure to state a claim.

In *Political Consultants*, a suit seeking prospective relief against the government, six justices held that § 227(b)(1)(A)(iii) of the TCPA violated the First Amendment.  *See* 140 S. Ct. at 2347 (Kavanaugh, J.) (plurality op.); *id.* at 2356–57 (Sotomayor, J., concurring in the judgment); *id.* at 2363 (Gorsuch, J., concurring in the judgment in part and dissenting in part).  "Because the law favors speech made for collecting government debt over political and other speech, the law is a content-based restriction on speech."  *Id.* at 2346

(Kavanaugh, J.) (plurality op.).  "The Government concede[d] that it cannot satisfy strict scrutiny to justify the government-debt exception."  *Id.* at 2347.

To remedy the First Amendment problem prospectively, seven justices invalidated and severed the government-debt exception from the rest of TCPA.  *Id.* at 2343; *id.* at 2357 (Sotomayor, J., concurring in the judgment); *id.* at 2363 (Breyer, J., concurring in the judgment with respect to severability and dissenting in part).  Although the Court awarded this prospective relief, it did not address a defendant's retrospective liability for violating § 227(b)(1)(A)(iii) in the past.  Nor could the Court have addressed that issue, because the plaintiffs only sought prospective relief for calls they intended to place, not retrospective relief for calls they had already placed.  *See id.* at 2345 (Kavanaugh, J.) (plurality op.).

Although this case involves a question not addressed in *Political Consultants*, the Court's precedents compel the conclusion that the Campaign cannot be held liable for violating § 227(b)(1)(A)(iii) during the 2015–2019 class period, when the statute unconstitutionally restricted speech.  As a general rule, "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place."  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (citation and internal quotation marks omitted).  Subsequent changes in the law are irrelevant to assessing the legal effect of a defendant's conduct.  As the Court recently explained, "a defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity."  *Morales-Santana*, 137 S. Ct. at 1699 n.24; *accord Welsh v. United States*, 398 U.S. 333, 361–64 (1970) (Harlan, J., concurring in result) (conviction stemming from unequal treatment "must be

11

reversed" regardless of how Congress would cure the unequal treatment); *Bond v. United States*, 564 U.S. 211, 226–28 (2011) (Ginsburg, J., concurring) (a defendant has a "right not to be convicted under a constitutionally invalid law" because "a law 'beyond the power of Congress,' for any reason, is 'no law at all'") (citation omitted).

Put simply, a defendant cannot be sanctioned for violating an unconstitutional law. *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (reversing fine because election law violated First Amendment); *Bates v. State Bar of Arizona*, 433 U.S. 350, 384 (1977) (reversing attorney discipline because bar rule violated First Amendment); *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 671 (1973) (reversing expulsion because university's bylaw violated the First Amendment). Nor can a defendant be ordered to pay civil damages for violating an unconstitutional law because "constitutionally protected" speech is "beyond the reach of a damages award." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 926 (1982); *see, e.g.*, *The Florida Star v. B.J.F.*, 491 U.S. 524, 532 (1989) (reversing damages award because "imposing damages" for constitutionally protected speech "violates the First Amendment"); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496–97 (1975) (reversing civil damages award because state law violated First Amendment); *New York Times Co. v. Sullivan*, 376 U.S. 254, 292 (1964) (reversing judgment awarding damages because state libel law violated the First Amendment).

In *Grayned*, for example, the Court held that a defendant cannot be held retrospectively liable for conduct that was proscribed by an unconstitutionally discriminatory law, even if the unconstitutionality is later cured. 408 U.S. at 107. John

12

Grayned was convicted in 1969 of violating a city's anti-picketing ordinance. *Id*. at 106. At the time of his arrest and conviction, the ordinance excepted labor picketing, but the city amended the ordinance two years later to eliminate this exception. *Id*. at 107 n.2. "Necessarily," the Court observed, "we must consider the facial constitutionality of the ordinance in effect when [Grayned] was arrested and convicted." *Id*. Because the ordinance violated equal protection in 1969, Grayned's "conviction under this invalid ordinance must be reversed," even though the city subsequently eliminated the ordinance's constitutional flaw. *Id*. at 107 (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972)).

*Grayned* is materially indistinguishable from this case. In both cases, the defendant allegedly violated laws classifying speech on an impermissible basis: the anti-picketing ordinance excepted labor picketing, just as the TCPA excepted calls to collect government debt. And in both cases, the constitutional flaw was subsequently eliminated: the city eliminated the labor-picketing exception in *Grayned*, just as the Court eliminated the government-debt exception in *Political Consultants*.

Under this precedent, the Campaign cannot be held liable for texting Olson, Wheeler, and the putative class because § 227(b)(1)(A)(iii) unconstitutionally restricted speech at the time the texts were sent in 2015–2019. The legality of the Campaign's conduct (and the validity of § 227(b)(1)(A)(iii) of the TCPA) must be judged under the law "in effect" when the Campaign sent the texts, just as the Court evaluated the legality of Grayned's conduct (and the validity of the anti-picketing ordinance) at the time of his arrest and conviction. *Grayned*, 408 U.S. at 107 n.2; *Landgraf*, 511 U.S. at 265. The version of

13

§ 227(b)(1)(A)(iii) in effect when the Campaign texted Olson, Wheeler, and the putative class in 2015–2019 was unconstitutional, *Political Consultants*, 140 S. Ct. at 2347 (Kavanaugh, J.) (plurality op.), because it classified speech "on an impermissible basis," *Morales-Santana*, 137 S. Ct. at 1699 n.24, just like the anti-picketing ordinance in *Grayned*, 408 U.S. at 107. The Campaign cannot be held liable for violating a statute that was "invalid" when the texts were sent. *Grayned*, 408 U.S. at 107. This is so "without regard to the manner in which the" Supreme Court "subsequently cure[d] the infirmity" by severing the unconstitutional part of the TCPA. *Morales-Santana*, 137 S. Ct. at 1699 n.24.

The Court's holding in *Political Consultants* also compels dismissal of Olson's and Wheeler's complaint because political speech must be "treated equally with debt-collection speech." 140 S. Ct. at 2344 (Kavanaugh, J.) (plurality op.). The Court cured the statute's unequal treatment prospectively by extending § 227(b)(1)(A)(iii) to government debt collectors who were previously exempted from the statute. *Id.* at 2355. To ensure equal treatment retrospectively, the Campaign cannot be held liable for texts sent between the enactment of the government-debt exception in 2015 and the entry of final judgment in *Political Consultants*, just as "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment." *Id.* at 2355 n.12. To impose liability for political calls while excusing calls to collect government debts would "endors[e] the very same kind of content discrimination [the Court was] seeking to eliminate" in *Political Consultants*. *Id.* at 2366 (Gorsuch, J., concurring in judgment in part and dissenting in part).

14

Two district courts recently addressed this issue in opinions dismissing alleged TCPA violations occurring before the Supreme Court's decision in *Political Consultants*. In *Creasy v. Charter Commc'ns, Inc*., No. CV 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), the plaintiffs alleged that Charter violated § 227(b)(1)(A)(iii) of the TCPA before the Supreme Court's decision in *Political Consultants*.  Charter moved to dismiss, arguing that "its alleged violations of an unconstitutional law are not enforceable in federal court" because the Supreme Court's decision in *Political Consultants* "amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the offending government-debt exception to the moment the Court severed that exception to preserve the rest of the law in [*Political Consultants*]."  *Id.* at *1.

The district court dismissed the claims involving calls sent "during the time period in which the government-debt exception remained operative within § 227(b)(1)(A)(iii)." *Id.* at *2.  The court concluded that the statute was unconstitutional at the time Charter made the calls because the "unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to Charter at the time of the challenged communications at issue."  *Id.* at *6.  That version of the statute was undisputedly unconstitutional: "[I]n the years in which § 227(b)(1)(A)(iii) permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, the entirety of the provision was, indeed, unconstitutional."  *Id.* at *2.  Applying the "timeless principle that '[a]n unconstitutional law is void, and is as no law,'" *id.* at *3 (quoting *Ex Parte Siebold*, 100 U.S. 371, 376 (1879)), the district court held that Charter could not be held liable for violating the unconstitutional version of the TCPA because "a speaker should not be

15

punished for engaging in speech that was restricted in an unconstitutional fashion," *id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972)).

Similarly, in *Lidenbaum, v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020), the plaintiff alleged that Realgy violated § 227(b)(1)(A)(iii) of the TCPA before *Political Consultants*. The court dismissed the case because "the statute at issue was unconstitutional at the time of the alleged violations." *Id.* at *7. Indeed, "at the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction." *Id.* To impose retroactive liability on the defendant would "raise its own set of equal treatment concerns—the very concern raised by the [*Political Consultants*] dissent." *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, at n.2). The court could not enforce the severed version of the TCPA to impose retroactive liability on the defendant because the Supreme Court's "severance of the government-debt exception applies only prospectively." *Id.* at *3.

Like the defendants in *Creasy* and *Lidenbaum*, the Campaign allegedly violated the unconstitutional version of § 227(b)(1)(A)(iii) in effect before the Supreme Court severed the statute in *Political Consultants*. "*That* version of the provision, which included the government-debt exception that the Court has now severed, was unconstitutional when [the Campaign] engaged in all … of the allegedly illegal communications the plaintiff[] complain[s] of." *Creasy*, 2020 WL 5761117 at *8. "An unconstitutional statute being as no law, the Court may not enforce the pre-[*Political Consultants*] version of § 227(b)(1)(A)(iii) against [the Campaign] here." *Id.*

16

To be sure, three justices stated that the decision in *Political Consultants* "does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12 (Kavanaugh, J.) (plurality op.). But that unreasoned obiter dicta is neither controlling nor persuasive, as explained by Justice Gorsuch in *Political Consultants* and the district courts in *Creasy* and *Lidenbaum*. The Supreme Court's existing precedents answer whether the Campaign can be held liable for violating § 227(b)(1)(A)(iii) at a time when the statute was unconstitutional. This Court should accordingly dismiss Olson's and Wheeler's claims because that result is compelled by *Grayned*, *Morales-Santana*, and *Political Consultants*.

*   *   *

Although the Court "normally do[es] not revisit decisions of law decided at earlier stages of the same case," *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 957 (8th Cir. 2019), the Campaign also incorporates by reference the arguments in its first motion to dismiss Plaintiffs' TCPA claims, ECF No. 17. In particular, Olson and Wheeler lack Article III standing because they only received a single text message from the Campaign, and they failed to plausibly allege that the Campaign used an autodialer. ECF No. 17, at 9–14, 21–27. The Campaign recognizes that the Court's prior rulings are law of the case, ECF No. 38, but the Campaign preserves these arguments in this motion to dismiss the Amended Complaint.

## II.   The Court Lacks Personal Jurisdiction Over Olson's Claims.

Even assuming the Court has subject matter jurisdiction, Olson's claims should be dismissed under Rule 12(b)(2) because this Court lacks personal jurisdiction to hear them.

17

It is black-letter law that a "[a] court must have personal jurisdiction to adjudicate the putative class representative's claims against the defendant just as in any individual case." 2 Newberg on Class Actions § 6:25 (5th ed.); *see also Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1332 (D. Minn. 2018) (collecting cases). Olson is a Wisconsin resident who received the text message giving rise to his TCPA claim on a cell phone with a Wisconsin area code. The overwhelming weight of authority holds that a text message or phone call to a non-forum phone number, even if the recipient receives the communication while in the forum state, is insufficient to vest the forum state's courts with personal jurisdiction over the plaintiff's claims.

For the Court to have personal jurisdiction over Olson's claim, Olson must establish that the exercise of personal jurisdiction comports with the Due Process Clause. *See Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 696–97 (8th Cir. 1995). Minnesota's long-arm statute conveys personal jurisdiction to the maximum extent allowed by due process. *Id.* at 697. Here, where the only basis for the Court to hear the claim can be "specific jurisdiction,"[6] the relevant question is whether the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 137 S. Ct. at 1780. Courts treat a TCPA violation like an intentional tort for jurisdictional purposes. *See Pickering v. ADP Dealer Servs., Inc.*, No. 12 C 6256, 2013 WL 996212, at *3 (N.D.

---

[6] The Court does not have general jurisdiction over the Campaign, because its affiliations with Minnesota are not "so continuous and systematic as to render [it] essentially at home in" Minnesota. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citation omitted).

Ill. Mar. 13, 2013). For out-of-state intentional torts allegedly causing injury in the forum state, the plaintiff must make "a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (citation omitted).

District courts across the country have declined to find personal jurisdiction in the forum state in TCPA cases where communications were sent to a forum-resident plaintiff whose phone number had a non-forum area code. *See, e.g.*, *Cunningham v. Carribean* [sic] *Cruise Line, Inc.*, 2015 WL 475271, at *6 (M.D. Tenn. Feb. 4, 2015); *Hastings v. Triumph Prop. Mgmt. Corp.*, 2015 WL 9008758, at *2 (S.D. Cal. Dec. 15, 2015); *Michaels v. Micamp Merch. Servs.*, 2013 WL 5970340, at *4 (W.D. Pa. Nov. 8, 2013). Indeed, a court recently stated that it was not aware of any "TCPA case where a communication directed to a forum-resident plaintiff at a phone number with a non-forum area code was sufficient to confer specific personal jurisdiction." *Hood v. Am. Auto Care, LLC*, No. 18-CV-02807-PAB-SKC, 2020 WL 1333091, at *4 (D. Colo. Mar. 23, 2020). This conclusion makes sense because, by directing a communication to a non-forum area code, a defendant is not expressly aiming its conduct at the forum state. Premising jurisdiction solely on where the plaintiff was when he or she received a communication would improperly subject a defendant to jurisdiction based on the "unilateral activity" of the plaintiff. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

By sending a text message to a Wisconsin phone number, the Campaign did not "expressly aim[]" its conduct at Minnesota. *Arden*, 614 F.3d at 796. A text message sent to Olson's Wisconsin phone number was "expressly aimed" at Wisconsin, even if the subject matter of the message related to an event across state lines. *Id.* Indeed, Olson's area code (715) covers Wisconsin, where he and the account holder reside. The Campaign thus would have expected the "brunt" of any injuries arising from text messages sent to Wisconsin phone numbers to be felt in Wisconsin. *Arden*, 614 F.3d at 796. Regardless of whether Olson was in Wisconsin or Minnesota when he received the text message, the Campaign's text message to Olson was "expressly aimed" at Wisconsin. *Id.*

The fact that the Campaign was also sending text messages regarding the same event to individuals with Minnesota phone numbers is insufficient to confer jurisdiction over Olson's claims, even if Olson was in Minnesota when he received the text message. That is because Olson's causes of action do not "aris[e] out of" the Campaign's attempts to contact Minnesota residents. *Bristol-Myers Squibb*, 137 S. Ct. at 1780. In *Hood*, the District of Colorado concluded it did not have jurisdiction over a TCPA claim arising from a text message to a Colorado resident with a Vermont area code, even though the underlying "telemarketing campaign target[ed] Colorado." 2020 WL 1333091 at *4. The court dismissed for lack of personal jurisdiction because the plaintiff "point[ed] to no allegations or evidence that would allow the Court to infer that defendants knew that his Vermont phone number was associated with a Colorado resident." *Id.* Likewise, Olson has not alleged or offered any evidence that the Campaign knew his Wisconsin phone number was associated with a Minnesota resident. The text message to Olson's Wisconsin

20

phone number simply does not "aris[e] out of" the Campaign's attempts to contact Minnesota residents. *Bristol-Myers Squibb*, 137 S. Ct. at 1780.

Accordingly, the Court should dismiss Olson's claims for lack of personal jurisdiction.

## III.   The Court Should Dismiss Olson's And Wheeler's Claims Under New York's Uniform Voidable Transactions Act.

The Court should also dismiss Olson's and Wheeler's UVTA claims. Plaintiffs fail to allege plausibly that the statute applies, an actual fraudulent transfer, or their entitlement to the extraordinary remedies available under the UVTA. In the alternative, the Court should stay their claims under the doctrine of primary jurisdiction while the Federal Elections Commission ("FEC") considers a related complaint.

### A.   Plaintiffs Fail to Demonstrate the UVTA Applies in the First Instance.

Plaintiffs seek to sidestep gating items in order to bring a UVTA action. *First*, Plaintiffs have failed to establish that the Campaign or its vendor AMMC is a "debtor" as defined in the UVTA. The UVTA's avoidance powers only apply to "transfer[s] made or obligations[s] incurred by a debtor," UVTA § 273(a), and the statute defines "debtor" as "a person that is liable on a claim." *Id.* § 270(f). Because the term "liable" is not defined by the statute, courts are to "construe it in accord with its ordinary or natural meaning." *Iverson v. United States*, 973 F.3d 843, 847 (8th Cir. 2020). To aid in the ordinary construction of a word, courts look to the dictionary definition. *See id.* Black's Law Dictionary defines "liability" as the "quality, state or condition of being legally obligated

or accountable" or "[a] financial or pecuniary obligation."  Black's Law Dictionary (11th ed. 2019).

Plaintiffs rely on a wholly conclusory, fact-bare allegation that the Campaign's "liability on the TCPA claims . . . alleged [in the Complaint] constitutes a debt," Am. Compl. ¶ 106, to satisfy the UVTA's requirement that the transferor or obligor be a debtor. This litigation is in its beginning stages and no liability has been determined.  Plaintiffs' UVTA claim is a blatant attempt to put the cart before the horse in hopes that Plaintiffs will qualify for the extraordinary injunctive and equitable relief available under the UVTA. But because there has been no determination of liability, the Campaign cannot be a debtor as defined under the UVTA, and the Plaintiffs' UVTA claims fail to even present a conceivable basis for relief.  *See, e.g., Twombly*, 550 U.S. at 570.

*Second*, Plaintiffs' argument that the UVTA even applies to the alleged transfers is based on nothing but mere speculation:  Plaintiffs allege "on information and belief" that the Campaign's assets are located and maintained in New York and, as such, the transfers are subject to the UVTA.  *Id.* ¶ 102.  Plaintiffs' guesswork regarding the "where" of the transfers at issue fails the Rule 9(b) standard and precludes any application of the UVTA to the transfers in the first instance.  *See Strubbe*, 915 F.3d at 1165 (finding that a "generalized allegation that the hospital paid vendors above market value and submitted a false cost report—without a statement of facts on which the belief is founded" was insufficient to plead fraud with particularity).  Moreover, Rule 9(b) prohibits Plaintiffs from burdening the Campaign with discovery in an attempt to legitimize Plaintiffs'

woefully deficient UVTA claim. *See Applied Research Assocs., Inc.*, 328 F. App'x at 747; *Whiddon*, 666 F. Supp. 2d at 691.

> **B.    Plaintiffs Fail to Adequately Plead the Actual Fraudulent Transfer Claim.**

Should the Court find that that the UVTA does apply in this case (it does not), Plaintiffs' UVTA actual fraud claim should be dismissed because the Amended Complaint fails to plead facts sufficient to satisfy the Rule 9(b) heightened pleading standard. *In re Petters Company, Inc.*, 557 B.R. 721 (Bankr. D. Minn. 2016) ("In addition to meeting the requirements under *Twombly* and *Iqbal*, the Plaintiffs must also meet the requirements of Fed. R. Civ. P. 9(b) . . . for all actual fraud claims."); *see also Ray*, 799 F. App'x. at 31–32 (applying Rule 9(b) particularity standard to dismiss New York state law fraudulent transfer claim); *Sharp Int'l Corp.*, 403 F.3d at 56 ("As 'actual intent to hinder, delay, or defraud' constitutes fraud … it must be pled with specificity, as required by Fed. R. Civ. P. 9(b).").

Other than merely reciting an element of the UVTA—"[t]he transaction [sic] at issue were and continue to be made with actual intent to hinder, delay, or defraud," Am. Compl. ¶ 103—Plaintiffs fail to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Stoebner v. Opportunity Finance, LLC*, 909 F.3d 219, 225–27 (8th Cir. 2018) (quoting *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and affirming dismissal of actual fraudulent transfer claims). The Amended Complaint does not contain a single fact showing that the Campaign's transfers to its services vendors in question were intended

to *actually* hinder, delay, or defraud creditors. Nor could it. As the Amended Complaint itself states, the Campaign's transfers to AMMC and other vendors constituted legitimate campaign activities—an everyday occurrence during presidential elections—and, in the case of AMMC, benefitted creditors by conserving funds that would have otherwise been spent on large commissions charged by other media vendors. *See* Am. Compl. ¶¶ 86–90; *see also* 52 U.S.C. § 30114(a)(6) (permitting broad uses of campaign funds); 11 C.F.R. § 113.2 (same); Explanation & Justification, *Expenditures; Reports by Political Committees; Personal Use of Campaign Funds*, 60 Fed. Reg. 7,862, 7,867 (Feb. 9, 1995) (stating that under the Federal Election Campaign Act and FEC regulations, campaign committees "have wide discretion" over how they spend their funds).

Further, the Plaintiffs make no effort to demonstrate how the "badges of fraud" apply to the transactions in question, as many courts look to the badges of fraud to supplement a Rule 9(b) analysis. *In re Vivaro Corp.*, 524 B.R. 536, 554–55 (Bankr. S.D.N.Y. 2015) (finding that the complaint did "not provide allegations sufficiently alleging any other badges of fraud that would meet Rule 9(b)'s 'particularity' requirements'); *see also* UVTA § 273(b). Rather, on its face, the Amended Complaint demonstrates the legitimacy of the Campaign's activities and the transfers made to AMMC. *See, e.g., In re Petters Co., Inc.*, 557 B.R. at 732 (dismissing actual fraudulent transfer claim where "it [was] clear from the complaint that [the transferor] was run as a legitimate, non-fraudulent company"). For example, in conflict with Plaintiffs' attempt to recast the Campaign's transactions as fraudulent, the Complaint admits that: (i) AMMC was created "to purchase digital, radio and television advertising . . . to save the campaign money by

acting as a clearinghouse for spending that would otherwise be done by outside vendors who typically take commissions on such practices," Am. Compl. ¶¶ 86–90;[7] (ii) the services provided by AMMC in exchange for the transfers enable the Campaign to save money, *id.* ¶ 87; (iii) the transfers were made to entities that have a legal existence separate and distinct from the Campaign, *id.* ¶¶ 86–90; (iv) as opposed to being concealed, the Campaign's transfers to the primary contractors have been publicly reported as required by the FEC, *id.* ¶ 52; and (v) as part of a campaign, money is spent to both raise additional money and generate support for the candidate, *id.* ¶¶ 86, 104.  None of the indicia of fraud are present here.[8]

In addition to the Amended Complaint being devoid of facts supporting actual fraud, nine out of the twelve transfers that Plaintiffs allege were made to AMMC occurred before the effective date of the UVTA.  *See* Am. Compl. ¶ 52.  The UVTA does not apply retroactively, *see* § 7 of New York Uniform Voidable Transactions Act, and thus Plaintiffs

---

[7] For decades, authorized committees of presidential nominees from both major parties have worked with general consultants to manage and coordinate various services for the committees, including marketing, ad placements, fundraising, and related subcontractor services.  These vendor relationships have created efficiencies and cost-savings for campaigns.  *See, e.g.*, Wendy Melillo, Morning or Mourning in America? Political Advertising and the Politics of Emotion, History News Network (May 17, 2020), https://historynewsnetwork.org/article/175514 (explaining that the 1972 re-election campaign "'saved the 15 percent of the amount of television and radio air costs an agency holds back as the fee for placing an ad'" (quoting Kathleen Hall Jamieson, *Packaging the Presidency: A History and Criticism of Presidential Campaign Advertising* (Oxford Univ. Press 3d ed. 1996) (1988))).

[8] Plaintiffs also make no attempt to plead insolvency, one of the badges of fraud. *See* UVTA § 273(b)(9).

are prohibited at the outset from seeking to apply the UVTA to the bulk of the transfers alleged in the Amended Complaint.

For the foregoing reasons, Plaintiffs fail to allege actual intent on the part of the Campaign as required by Rule 9(b), and the third cause of action should be dismissed.[9]

### C.   Plaintiffs Seek Extraordinary Relief With No Supporting Facts.

Plaintiffs request extraordinary "injunctive and equitable relief" without having pleaded any supporting facts and relying solely on a conclusory recitation of the UVTA's fraudulent intent element.  Am. Compl. ¶ 103.  Specifically, Plaintiffs seek an injunction "prospectively enjoining voidable or fraudulent transactions, attachment of assets, appointment of a receiver, and imposition of a constructive trust"—all prior to this Court making any determination on the liability of the Campaign and AMMC.  *Id.* ¶ 114.  At bottom, the relief sought in light of the absence of supporting facts constitutes a desperate and transparent attempt to curtail the President's Campaign's First Amendment right to make unfettered political expenditures in ordered to connect with voters.  *See Buckley v. Valeo*, 424 U.S. 1, 14 (1976).

Although the UVTA does provide for issuance of an injunction, attachment of assets, and appointment of a receiver in connection with an actual fraudulent transfer action, *see* UVTA §§ 276(2), (3)(i) & (3)(ii), for the reasons stated above, Plaintiffs have failed to present a legally or factually cognizable UVTA claim.  As such, the UVTA cannot be the basis for seeking an injunction, appointment of a receiver, or an attachment of assets

---

[9] As previously stated, Plaintiffs' failure to satisfy the Rule 9(b) standard also prohibits them from seeking discovery against the Campaign.  *See supra*, at 7–9.

against the Campaign.  Nor could the Plaintiffs, due to the lack of facts in the Amended

Complaint, satisfy the specific standards applying to an injunction,[10] attachment of assets[11]

or appointment of a receiver.[12]  Plaintiffs attempt to prop up their baseless allegations, all

---

[10] "The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction except that the moving party, instead of showing a *likelihood of success* on the merits, must show *actual success* on the merits." *See Marriott v. County of Montgomery*, 426 F. Supp. 2d 1, 11 (N.D.N.Y. 2006) (emphasis in original).  An injunction may issue only when the movant demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Alphas Capital Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 338 (S.D.N.Y. 2020) (quoting and citing to eBay).

[11] New York law provides that "[a]n order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled . . . to a money judgment against one or more defendants, when:  . . . (3) the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." N.Y. C.P.L.R. § 6201 (McKinney 2020). "More, however, is required than the existence of a statutory ground for attachment.  A plaintiff seeking an order of attachment must show 'that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in Section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.'" *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 219 (2d Cir. 2006).  In determining whether an attachment should issue, intent to defraud is required and may not be lightly inferred.  *See Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y. 1995).  The issuance of such relief is discretionary, and since attachment is a harsh remedy, the court must exercise care in its application. *Id.*

[12] A receivership is "considered an extraordinary remedy and should be utilized only where clearly necessary to protect an interest by the plaintiff in property where the rights over that property are in dispute." *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).  Courts consider the following factors in determining whether appointment of a receiver is appropriate:  fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the

prior to any determination of liability, merely by asserting that they "seek to preserve funds to compensate Plaintiffs and other members of the Classes for TCPA violations, to prevent funds from being transferred from Trump For President to AMMC, Parscale Strategy and others, and to prevent funds from being transferred from AMMC to other insiders in an effort to strip liquidity." Am. Compl. ¶ 104. This is a conclusory statement, not a factual allegation, and fails to satisfy Plaintiffs' burden of pleading the factors necessary for extraordinary injunctive or equitable relief.

Finally, Plaintiffs' Amended Complaint is woefully bereft of any support for the imposition of a constructive trust.[13] The UVTA has no specific provision providing for the imposition of a constructive trust as a remedy, and Plaintiffs have not pleaded a separate cause of action requesting a constructive trust. In any event, Plaintiffs' make no effort to demonstrate facts supporting any of the elements necessary to impose a constructive trust.

As a result of the scant nature of the allegations in the Amended Complaint, Plaintiffs' requests for relief are futile and the Court should dismiss the third cause of action in its entirety.

---

action and the possibility of irreparable injury to his interests in the property. *Id*. (citing Wright & Miller, Federal Practice & Procedure § 2983 (1999)).

[13] "New York law generally requires four elements for a constructive trust: '(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment.'" *In re First Central Financial Corp.*, 377 F. 3d 209, 212 (2d Cir. 2004) (citing to *United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995)). "The fourth element is the most important since 'the purpose of the constructive trust is prevention of unjust enrichment.'" *Id.* (citing to *Simonds v. Simonds*, 45 N.Y.2d 233, 241–42 (1978)).

**D.    In The Alternative, The Court Should Stay Proceedings on Plaintiffs'
UVTA Claims Under The Doctrine of Primary Jurisdiction.**

If the Court does not dismiss Plaintiffs' UVTA claims, it should stay these claims

under the doctrine of primary jurisdiction.  Currently pending before the FEC is a complaint

filed by the Campaign Legal Center ("CLC") on July 24, 2020, that involves the same

factual allegations underlying Plaintiffs' UVTA claims in this case.[14]   Because the

resolution of the FEC complaint will aid this Court's assessment of Plaintiffs' UVTA

claims, the Court would benefit from deferring to the FEC's "specialized expertise" in this

area. *DeBruce Grain, Inc. v. Union Pac. R. Co.*, 149 F.3d 787, 789 (8th Cir. 1998).

Moreover, staying these claims until the FEC has resolved the CLC complaint would

promote the need for "uniform national treatment" of campaign-related transactions under

federal law. *Id.*  Thus, the Court should stay Plaintiffs' UVTA claims pending resolution

of CLC's FEC complaint.

The doctrine of primary jurisdiction applies to claims "properly cognizable in court

that contain some issue within the special competence of an administrative agency." *Reiter*

*v. Cooper,* 507 U.S. 258, 268 (1993).  "Under the doctrine of primary jurisdiction a court

may leave an issue for agency determination when it involves the special expertise of the

agency and would impact the uniformity of the regulated field." *DeBruce Grain*, 149 F.3d

789.  "No fixed formula exists for applying the doctrine of primary jurisdiction.  In every

---

[14] FEC Complaint filed by Campaign Legal Center against Donald J. Trump for
President, Inc. and Trump Make America Great Again Committee (July 24, 2020),
https://campaignlegal.org/sites/default/files/2020-07/07-27-
20%20Trump%20AMMC%20%28final%29.pdf.

case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Courts have discretion whether to stay or dismiss claims pending referral to the agency of primary jurisdiction. *Reiter*, 507 U.S. at 268.

Courts regularly stay or dismiss claims that implicate the FEC's primary jurisdiction over the Federal Election Campaign Act of 1971, as amended, 52 U.S.C. § 30101 *et seq.*, and its implementing regulations ("FECA"). *See, e.g.*, *Gabauer v. Woodcock*, 594 F.2d 662, 673–74 (8th Cir. 1979). This is true even if the claim is not brought under FECA but nevertheless raises issues of federal campaign finance law. *See, e.g.*, *Nat'l Republican Cong. Comm. v. Legi-Tech Corp.*, 795 F.2d 190, 193–94 (D.C. Cir. 1986) (claim brought under Copyright Act); *Duke v. S. Cent. Bell, Inc.*, No. CIV. A. 90-3088, 1991 WL 42546, at *3 (E.D. La. Mar. 21, 1991) (claim brought under state contract law); *Friends of Phil Gramm v. Americans for Phil Gramm in '84*, 587 F. Supp. 769, 773 (E.D. Va. 1984) (state tort claim). The relevant question in such cases is whether the FEC can "play a useful role" and "materially aid the Court in resolving" the claims before it. *Duke*, 1991 WL 42546, at *3.

The CLC complaint that is currently before the FEC involves the exact same transactions and entities that are at issue in the Plaintiffs' UVTA claims. Indeed, the vast majority of Plaintiffs' allegations in Count III are lifted verbatim from the CLC complaint. *Compare* Am. Compl. ¶¶ 86–92 & 94–101, *with* CLC Compl. ¶¶ 19–25 & 52–59. The CLC complaint alleges that the Campaign has violated FECA by failing to disclose

30

payments that AMMC and Parscale Strategy have made to their subvendors or employees providing services to the Campaign—which the CLC complaint (wrongly) claims has "disguised nearly $170 million of campaign spending."  CLC Compl. ¶ 2.  CLC has asked the FEC to authorize an investigation into whether the Campaign is impermissibly using AMMC or Parscale Strategy as a "conduit" such that payments made to subvendors should be disclosed on the Campaign's FEC reports.  *Id.* ¶ 72.

In this case, Plaintiffs are asking the Court to assess the purpose behind the Campaign's payments to AMMC and other entities while the FEC is making that same determination based on the same set of allegations.  This Court should defer to the FEC's primary jurisdiction, because the agency will be able to bring its "special expertise" in the administration of campaign finance law to its assessment of the identical allegations in the CLC complaint.  *DeBruce Grain*, 149 F.3d 789.  As the CLC complaint describes, the FEC has a robust and well-developed framework for assessing whether a campaign committee attempted to conceal transactions with vendors, which requires a fact-intensive inquiry into the relationships among the various entities involved as well as other factors.  *See* CLC Compl. ¶¶ 64–69.  Federal campaign finance law involves a highly "complex regulatory scheme," *United States v. Lundergan*, No. 5:18-CR-00106-GFVT, 2019 WL 3804239, at *3 (E.D. Ky. Aug. 13, 2019), and the FEC's adjudication of the issues raised by the CLC complaint will "materially aid the Court in resolving" the UVTA claims in this case, *Duke*, 1991 WL 42546, at *3.

Moreover, staying Plaintiffs' UVTA claims until the FEC has addressed the CLC complaint will promote "uniform national treatment" of such transactions under federal

31

law. *DeBruce Grain*, 149 F.3d at 789.  It would threaten the uniformity of federal campaign finance law if the Court were to prematurely make an assessment of the propriety of the Campaign's transactions contrary to the FEC's assessment.  Thus, the Court should not "attempt[] to predict how the FEC would resolve this matter," especially since the matter "is already pending . . . before the Commission."  *Nat'l Republican Cong. Comm.*, 795 F.2d at 193–94.

Accordingly, this Court should defer to the FEC's primary jurisdiction and stay Plaintiffs' UVTA claims pending resolution of the CLC complaint.

## CONCLUSION

For these reasons, the Campaign respectfully requests that the Court grant the Campaign's motion to dismiss Olson's and Wheeler's claims with prejudice.  In the alternative, the Court should stay proceedings on their UVTA claims pending a primary jurisdiction referral to the FEC.

Dated:  October 30, 2020                    Respectfully submitted,

/s/ *Benjamin L. Ellison*
Benjamin L. Ellison (#392777)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Phone:  (612) 217-8800
Fax:  (844) 345-3178
bellison@jonesday.com

Brett A. Shumate*
Kaytlin L. Roholt*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Phone:  (202) 879-3939
Fax:  (202) 626-1700
bshumate@jonesday.com
kroholt@jonesday.com

*Counsel for Defendant Donald J. Trump for President, Inc.*

*admitted *pro hac vice*